Filed 10/15/14

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| VERIZON CALIFORNIA INC., | C074179 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2011-00116029-CU-MC-GDS) |
| v. | |
| BOARD OF EQUALIZATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed with directions.

O'Melveny & Myers, Carla J. Christofferson, Dimitri D. Portnoi, Smita Reddy, Melanie P. Ochoa; Sutherland Asbill & Brennan, Carley A. Roberts and Douglas Mo for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, Molly K. Mosley, Robert E. Asperger and Serajul F. Ali, Deputy Attorneys General, for Defendant and Respondent Board of Equalization.

Nicholas S. Chrisos, County Counsel, and Laurie A. Shade, Deputy County Counsel, for Defendant and Respondent County of Orange.

Theresa A. Goldner, County Counsel, and Jerri S. Bradley, Deputy County Counsel, for Defendant and Respondent County of Kern.

1

John F. Krattli, County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

Pamela J. Walls, County Counsel, and Leslie E. Murad II, Deputy County Counsel, for Defendant and Respondent County of Riverside.

John F. Whisenhunt, County Counsel, Scott Fera and Rick J. Heyer, Deputy County Counsel, for Defendant and Respondent County of Sacramento.

Jean-Rene C. Basle, County Counsel, and Kevin L. Norris, Deputy County Counsel, for Defendant and Respondent County of San Bernardino

Dennis A. Marshall and Michael C. Ghizzoni, County Counsel, and Marie A. LaSala, Deputy County Counsel, for Defendant and Respondent County of Santa Barbara.

Orry P. Korb, County Counsel, and Neysa A. Fligor, Deputy County Counsel, for Defendant and Respondent County of Santa Clara.

Leroy Smith, County Counsel, and Linda K. Ash, Deputy County Counsel, for Defendant and Respondent County of Ventura

This is a property tax refund action for the 2007 tax year filed by plaintiff, Verizon California Inc. (Verizon). The trial court entered a judgment of dismissal after it sustained defendants' demurrer without leave to amend. Defendants are the Board of Equalization (Board) and nine individual counties. Verizon owns property in 38 counties, but it sought a refund for taxes paid for the 2007 tax year only from the nine named counties. The trial court sustained the demurrer on the ground Verizon failed to name indispensable parties, i.e., the 29 absent counties in which Verizon owns property, even though Verizon sought no refund from those counties.

The properties of telephone companies, of which Verizon is one, are assessed annually by the Board on a statewide basis, rather than by each individual county. (Cal.

2

Const., art. XIII, § 19.)  If a taxpayer disagrees with the assessed value determined by the Board and desires a refund, the taxpayer must first exhaust its administrative remedies by petitioning the Board for reassessment, paying the taxes at issue, and claiming a refund. (Rev. & Tax. Code, §§ 741, 5148, subds. (e)-(g).)[1]  Only then may a taxpayer file a complaint, which must be "a single complaint with all parties joined therein with respect to disputes for any year."  (§ 5148, subd. (a).)

The trial court sustained defendants' demurrer without leave to amend on the ground the absent counties were indispensable parties.  The trial court reasoned that section 5148 required all counties in which Verizon owned property to be named as defendants in the action, and that even though Verizon sought no refund from the absent counties for 2007, a change in the assessment for 2007 would affect the absent counties in future tax years.  The statute of limitations having run on filing a complaint against the absent parties, the case was dismissed.

We shall conclude that section 5148 does not require a plaintiff to name as a defendant every county in which it owns property, unless it is seeking a refund from the county.  We shall further conclude that in this case the trial court abused its discretion in finding the absent counties were indispensable parties.  There is no evidence in the record that the absent counties will necessarily be affected in the future by a change in the 2007 assessment, and the absent counties' object in seeing that the Board appraise the property at its highest value in future tax years will be adequately litigated by the named defendants.

FACTUAL AND PROCEDURAL BACKGROUND

Verizon is a telephone company, and as such is taxed pursuant to article XIII, section 19 of the California Constitution.  That section provides that the Board must

---

[1] Section references to an unidentified code are to the Revenue and Taxation Code, unless otherwise indicated.

annually assess property for the purpose of taxation.  The property is assessed at its fair market value or full value on the first day of January of each year.  (§ 722.)  "Full market value" or "full value" "mean the price at which a property, if exposed for sale in the open market with a reasonable time for the seller to find a purchaser, would transfer for cash or its equivalent under prevailing market conditions between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains and neither being in a position to take advantage of the exigencies of the other."  (Cal. Code Regs., tit. 18, § 2, subd. (a).)

The property may be valued using one of four approaches:  (1) the comparative sales approach, (2) the stock and debt approach, (3) the replacement or reproduction cost approach, or (4) the income approach.  (Cal. Code Regs., tit. 18, § 3.)  The Board assessed Verizon's property pursuant to the third option, using a "Replacement Cost New Less Depreciation" model.  Under this model, the replacement or reproduction cost is "reduced by the amount that such cost is estimated to exceed the current value of the reproducible property by reason of physical deterioration, misplacement, over- or underimprovement, and other forms of depreciation or obsolescence."  (Cal. Code Regs., tit. 18, § 6, subd. (e).)

The Legislature has determined that the value of the assets of a phone company or any public utility depends on the interrelation and operation of the entire property as a unit.  (*ITT World Communications, Inc. v. City and County of San Francisco* (1985) 37 Cal.3d 859, 863 (*ITT World*).)  Thus, the value the Board assigns to Verizon's property within the state is determined as a whole.  (*Id.* at pp. 863-864.)

The complaint states, and we accept as true, that "[o]nce the Board has adopted a unitary value of the property, it transmits the value to each county through a 'roll' and each county taxes the telephone company according to the Board-adopted value of the property that is in that county."  The Board "makes a formulary allocation that has little

4

or no relationship to the actual fair market value of the particular assets situated within the jurisdiction." (*ITT World, supra*, 37 Cal.3d at p. 864.)

If an owner of property objects to the value of the assessment, it must first petition the Board for reassessment. (§§ 741-742.) The petition is filed with the Board, and sets forth the name of each county in which the petitioner owns property that has been assessed in the unitary assessment. The Board holds a hearing on the petition, and notifies the petitioner of its decision. (§§ 742-744.) A petition to the Board for reassessment together with payment of the taxes are prerequisites to any tax refund action. (§ 5148, subds. (e) & (g).)

In this case, Verizon submitted a petition for unitary property reassessment for the Board's 2007 valuation. The petition named the 38 counties in which the unitary property was located, and stated that the petition was a request for refund. The Board's adopted unitary valuation was $3,480,700,000. Verizon was of the opinion the value should be $2,972,386,134. Verizon contended that the Board's value did not adequately account for obsolescence. The Board issued its notice of decision, denying Verizon's petition and affirming the previously assessed value. Thereafter, Verizon made property tax payments to 38 counties.

Section 5148 provides that any court action to recover taxes levied on Board-assessed unitary property must be brought in a single complaint "with all parties joined therein with respect to disputes for any year." (*Id*., subd. (a).) The action must "name the [B]oard and the county or counties." (*Id*., subd. (b).) Verizon's complaint named the Board and 9 of the 38 counties in which it owned property.

The Board, joined by the nine named counties, demurred to the complaint on the ground it failed to join indispensable parties, i.e., the remaining 29 counties in which Verizon owned property. The Board argued that all 38 counties were indispensable parties because section 5148 required they be named in any action, because any judgment would impact the Board's valuation methodology and have an effect on future

5

assessments pertaining to the absent counties, because the counties have no procedure to object to Board assessments absent being named as a defendant, because the counties' interests may differ, and because any other interpretation of section 5148 would allow a taxpayer to sue just one county to obtain a judgment that would prejudice all affected counties.

Verizon opposed the demurrer, arguing that section 5148 required only those counties that are parties to the litigation to be joined in the action, and that the absent counties were neither necessary nor indispensable parties.

The trial court sustained the demurrer without leave to amend. The trial court reasoned that section 5148 required Verizon to name all 38 counties as defendants in the refund action, and further reasoned the unnamed counties were indispensable parties because they would be directly affected in subsequent years by a change in method of valuation of property on their tax rolls in 2007. The trial court was persuaded in part by the fact that the counties have no opportunity to challenge or defend the Board's assessment unless they are included in a refund action. The trial court found that the absent counties' interests were not necessarily protected by the named defendants because the Board has no financial interest in the taxes themselves and the interests of the named counties are not necessarily aligned with the unnamed counties.

At the demurrer hearing, Verizon called the trial court's attention to the fact that it had also filed a complaint for refund for the 2008 tax year, in which it had named all 38 counties as defendants. Verizon informed the trial court that the court had the power to consolidate the two actions, but did not move in this action, either orally or in writing, to consolidate. Following oral argument, the trial court entered its ruling on April 16, 2013, sustaining the demurrer. Verizon made a written motion to consolidate in the 2008 refund action on or about May 1, 2013. The trial court in that action denied the motion

6

following the May 29, 2013, hearing, on the ground there was no longer an existing case to consolidate.[2]

This appeal is from the judgment of dismissal following the order sustaining the demurrer.

DISCUSSION

I

Section 5148

Verizon first argues that section 5148 does not require it to name every county in which it owns property in its tax refund action. We agree.

Section 5148 provides in pertinent part:

"Notwithstanding Section 5140, an action to recover taxes levied on state-assessed property arising out of a dispute as to an assessment made pursuant to Section 721, including a dispute as to valuation, assessment ratio, or allocation of value for assessment purposes, shall be brought under this section. In any action brought under this section, the following requirements shall apply:

"(a) The action shall be brought by the state assessee. There shall be a single complaint with all parties joined therein with respect to disputes for any year.

"(b) The action shall name the board and the county or counties. . . . [¶] . . . [¶]

---

[2] We deny Verizon's requests for judicial notice of the tentative ruling overruling the Board's demurrer in the 2008 action and of the joinder without comment of all 38 counties in the Board's demurrer, motion to continue demurrer, and motion to strike, as well as the counties' joint motion for extension of time to answer the complaint, which Verizon argues are all relevant to show that the counties do not have unique defenses to this action. These documents were not judicially noticed in the trial court. Because we review the judgment of the trial court, and the question posed is whether the trial court erred in sustaining the demurrer to the complaint, we ordinarily look only to the record made in the trial court. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325.)

7

"(d) Venue of the action shall be in any county in which the Attorney General of California has an office or in which the state assessee has a significant presence. [¶] . . . [¶]

"(f) A timely filed petition for reassessment or petition for correction of allocated assessment shall constitute a claim for refund if the petitioner states in the petition it is intended to so serve.

"(g) The action shall be commenced only after payment of the taxes in issue and within four years after the latest of the dates that the State Board of Equalization mailed its decision or its written findings and conclusions on the following:

"(1) A petition for reassessment filed under Section 741 and intended to constitute a claim for refund.

"(2) A petition for correction of allocated assessment filed under Section 747 and intended to constitute a claim for refund. [¶] . . . [¶]

"(i) Any refund of tax overpayments and any interest thereon, determined in any action brought under this section to be due shall be made by the defendant county or counties."

The Board points to subdivisions (a) and (b) as setting forth the requirement that all counties in which the taxpayer owns property must be named as defendants in any refund action. Verizon argues the statute's requirement that all parties be joined in a single complaint refers to all counties from whom the taxpayer seeks a refund, not to all counties in which the taxpayer owns property. Verizon argues section 5148 was intended to limit litigation by making it unnecessary for a taxpayer to file multiple complaints in multiple venues to recover a refund, and that it was not intended to force Verizon to file a refund action against counties from which it is not seeking a refund.

The Board, echoing the trial court's reasoning, argues the requirement that "all parties [be] joined therein with respect to disputes for any year" cannot mean just the parties to the lawsuit, because that would be redundant. The Board argues that a "dispute" in this context is not synonymous with an "action," and that a "dispute" must be interpreted with reference to the first sentence of section 5148 as a "dispute as to an

8

assessment made pursuant to Section 721." The Board argues that unlike section 5140, which states that the taxpayer must bring an action for refund against a county or city, section 5148 requires an action to be brought against "the board and the county or counties." (§ 5148, subd. (b).) The Board also notes that while the counties have no right to participate in the administrative proceeding under section 741, et seq., section 5148 specifies that they be named in a refund action.[3] The Board argues that because all 38 counties in which Verizon's property is located were identified by it in its petition for reassessment before the Board, they were parties to the dispute and must be named in any refund action.

The legal issue is whether the Legislature intended this language --"There shall be a single complaint with all parties joined therein with respect to disputes for any year. [¶] . . . The action shall name the board and the county or counties." (§ 5148, subds. (a) & (b))--to mean the taxpayer is required to name as a defendant every county in which it owns assessed property, or whether it must name only those counties from which it seeks a refund. We shall conclude that the language of the statute indicates there is no requirement to sue every county in which the property is located. To the extent the language of the statute is not conclusive, the legislative history indicates an intent to require only those counties from which a refund is sought be named as defendants.

A. Statutory Language

In interpreting section 5148, we employ well-settled rules of statutory construction. "Our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the

_____

[3] Section 741 refers to a petition for reassessment of property that the Constitution requires the Board to assess. This includes, inter alia, property owned or used by a regulated telephone company. (Cal. Const., art. XIII, § 19.)

9

context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.  [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

As mentioned, section 5148 provides in relevant part that "an *action to recover taxes* levied on state-assessed property *arising out of a dispute as to an assessment* made pursuant to Section 721, including a dispute as to valuation," as in the present case, "shall be brought by the state assessee," "[t]here shall be a single complaint with *all parties joined* therein with respect to disputes for any year," and "[t]he action shall name the board and the county or counties." (§ 5148, subds. (a) & (b), italics added.)  This case turns on whether the term "parties" relates to "action" or "dispute."  For two reasons, we conclude it relates to the former.  First, section 5148 sets forth the requirements for bringing "an action to recover taxes . . . arising out of a dispute as to an assessment . . . ."  Thus, the subject of the provision is the "action," while "to recover taxes" and "arising out of a dispute as to an assessment" describe the type of action the section is intended to regulate.  Indeed, five of the section's nine subdivisions, including the key subdivisions (a) and (b), begin with the words:  "The action . . . ."

Second, while subdivision (a) is hardly a model of clarity, we conclude the sentence containing "parties" sets forth two requirements:  (1) "[t]here shall be a single complaint with all parties joined therein"; and (2) "[t]here shall be a single complaint . . . with respect to disputes for any year." (§ 5148, subd. (a).)  A "complaint" is a "pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." (Black's Law Dict. (9th ed. 2009) p. 323, col. 2.)  Thus, all parties must be joined in the same action to recover taxes arising out of

10

an assessment dispute and all such disputes in a given year must be asserted in the same action. So read, "parties" relates to the action brought by the assessee, not to the assessment dispute from which the action arose. Because the action brought under section 5148 is an "action to recover taxes," where an assessee seeks to recover taxes from multiple counties based on an assessment dispute in a given year, all such counties must be joined in the same action; the assessee may not initiate multiple lawsuits to recover taxes from multiple counties. However, there is nothing in the language of section 5148 to indicate the assessee is also required to join counties from which no tax recovery is sought.

This conclusion is bolstered by subdivision (b), which clearly states: "The action shall name the board and the *county or counties*." (§ 5148, subd. (b), italics added.) Use of the singular indicates the Legislature envisioned a scenario in which the assessee seeks to recover taxes from a single county even though unitary property assessed pursuant to article XIII, section 19 of the state Constitution will typically lie in multiple counties. In such a scenario, the assessee would name the Board and the county from which the assessee seeks to recover taxes.

This interpretation is confirmed by the legislative history of the provision.

B. Legislative History

The analysis of Assembly Bill No. 2120 by the Legislative Analyst's Office set forth the procedure for obtaining a refund of state-assessed property as it existed prior to section 5148:

> "In the case of state-assessed property, the assessee must (1) file a petition for reassessment or reallocation with the [B]oard; (2) file a claim for refund in each county within which the state-assessed property in question is located; and (3) file an action for refund in superior court. . . . [¶] . . . [¶]
>
> "In the case of both state-assessed and locally-assessed property, the assessee must file an action in court against every city and every county

11

*from which it seeks a refund of taxes*. Under current court laws, however, these claims may be joined for litigation.

"In the case of state-assessed property, the Board . . . is a named defendant in the court case, and is required to defend its determination of values or allocations of values. The ruling, however, is brought against each county or city named in the suit, and any refunds are made separately by each city or county." (Legis. Analyst, Analysis of Assem. Bill No. 2120 (1987-1988 Reg. Sess.) Sept. 2, 1987, p. 2, italics added.)

The purpose of the legislation adding section 5148 was to streamline the appeals process for state assessees. The proponents of the legislation believed the prior process was cumbersome, and overburdened state assessees and counties. (Assem., 3d reading analysis of Assem. Bill No. 2120 (1987-1988 Reg. Sess.) as amended June 3, 1987, p. 2.) While the prior procedure required the taxpayer to file a claim for refund in every county in which the property was located, it did not require the taxpayer to file a separate refund action against every county, but only against those counties from which a refund was sought. (Assem., Conc. in Sen. Amends., Assem. Bill No. 2120 (1987-1988 Reg. Sess.) as amended Sept. 1, 1987, p.1; Legis. Analyst, Analysis of Assem. Bill No. 2120 (1987-1988 Reg. Sess.) Sept. 2, 1987, p. 2.) It would be inconsistent with the purpose of the legislation, which was to streamline the process, to require the taxpayer to file a lawsuit against counties from which it seeks no refund, when such a requirement did not exist before the legislation was enacted.

Considering this history, it is apparent that the phrase, "[t]here shall be a single complaint with all parties joined therein" refers not to all the counties in which the taxpayer owns property, but all the parties the taxpayer intends to sue for a refund. (§ 5148, subd. (a).) No longer must the taxpayer sue each county in a separate complaint. It may now join all counties it intends to make parties to the action in one complaint.

Our determination that section 5148 does not require all counties in which Verizon owns property to be named does not end the matter. We must additionally determine whether those counties are indispensable parties to the action.

12

## II
## Necessary and Indispensable Parties

Code of Civil Procedure section 389 governs the joinder of necessary and indispensable parties. Subdivision (a) describes a necessary party:

> "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

Subdivision (b) of section 389 describes an indispensable party:

> "If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

As is apparent from the structure of Code of Civil Procedure section 389, and the first phrase of subdivision (b), a person must be a necessary party to be an indispensable party. "A determination that the persons are necessary parties is the predicate for the determination whether they are indispensable parties." (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1100 (*Deltakeeper*).)

13

A. Standard of Review

We review the trial court's determination that a party is or is not an indispensable party for abuse of discretion. (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1151-1153 (*County of San Joaquin*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

As we explained in *County of San Joaquin* an abuse of discretion standard is appropriate in reviewing a determination of indispensable parties because the determination is " 'based on fact-specific considerations. [Citation.] These determinations are anything but pure legal conclusions. . . . [T]hey involve the balancing of competing interests and must be steeped in "pragmatic considerations." ' [Citation.] The latitude inherent in subdivision (b) renders the determination 'more in the arena of a factual determination than a legal one.' [Citation.] 'The rule calls for a pragmatic decision based on practical considerations in the context of a particular litigation. . . . [T]he district court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward." ' [Citation.] The trial judge, who is ' "closer to the arena," ' is usually better situated than an appellate panel ' "to survey the practicalities involved in the litigation." ' [Citation.]" (*County of San Joaquin, supra*, 54 Cal.App.4th at pp. 1152-1153.)

This case comes to us following judgment on demurrer. A demurrer is particularly unsuited to resolving questions of fact regarding the misjoinder of parties because "a demurrer lies only for defects appearing on the face of the pleadings [and] a defendant may not make allegation of defect or misjoinder of parties in the demurrer if the pleadings do not disclose the existence of the matter relied on; such objection must be

14

taken by plea or answer." (*Harboring Villas Homeowners Assn. v. Superior Court* (1998) 63 Cal.App.4th 426, 429.)

The trial court's determinations that the action would have an effect on the interests of the absent counties, and that the resolution of the action in their absence would impair or impede their ability to protect their interests are determinations that the absent parties are necessary parties. (See Code Civ. Proc., § 389, subd. (a).) Whether the absent counties' claim an interest in the subject of the action, whether that interest will be impaired, and whether they have the ability to protect their interests are questions of fact that are reviewed for substantial evidence.

As stated, a demurrer lies only for defects appearing on the face of the pleading, and the complaint in this matter did not disclose the existence of the facts on which the Board relies to support its claim that the absent counties have an interest in the subject of this action. Thus, as we shall explain, there was no substantial evidence to support the trial court's finding that the absent counties claimed an interest in the subject of the action that would be impaired if they were omitted from the action. As a result, it cannot be said on this record that the absent counties were necessary parties to the action. A party must be a necessary party to be an indispensable party. Consequently, the trial court abused its discretion in sustaining the demurrer.

The principles governing the sufficiency of a complaint subject to demurrer are "well settled." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713.) For purposes of the demurrer, all material facts that are properly pleaded are admitted. (*Ibid.*) We also consider matters judicially noticed in testing the sufficiency of a complaint. (*Id.* at p. 716.) A demurrer does not admit contentions, deductions, or conclusions of fact or law. (*Id.* at p. 713.)

B. Necessary Parties

Verizon's complaint alleged, in pertinent part, that the Board, relying on a "Replacement Cost New Less Depreciation" model, adopted a unitary value for its

15

property of $3,480,700,000, that Verizon objected to the assessed value by filing a petition for reassessment that asserted the Board's "Replacement Cost New Less Depreciation" model as applied to Verizon failed to recognize properly economic and functional obsolescence, that the Board denied Verizon's petition, that Verizon paid the property taxes to all 38 counties in which it owned property, that Verizon sought a tax refund only from the counties it named as defendants, and that the vast amount of its total property taxes are owed to the defendant counties.

The Board demurred. Its sole argument was based on the failure to name all counties in which Verizon's property was located as defendants to the refund action. The Board made the legal argument that section 5148 required all counties to be named, an argument we addressed in the first part of this opinion. The Board also made the factual argument that the omitted counties were indispensable parties, since they would be affected in subsequent years by any change in the 2007 assessment. The Board argued that in assessing unitary property, it takes into account depreciation and obsolescence. "Since depreciation and obsolescence normally occur over time, the Board often accounts for those factors by using the same method from one year to another. . . . Accordingly, absent intervening circumstances, adjustments made to the method of accounting for depreciation or obsolescence in one year will require conforming adjustments in later years as well."

The trial court concluded the absent counties were necessary parties because although the Board makes a new determination of fair market value each year, the same or similar issues continue from year to year, and the most recent assessment is the starting point or lead value for the following year's assessment. Therefore, any judgment in the current action will have a direct effect on future assessments. The counties would be unable to protect their interests in future assessments because there exists no procedure for them to either challenge or defend the Board's assessment unless named a defendant in a tax refund action. The court concluded that the counties' only opportunity to impact

16

the outcome of an assessment dispute is when the dispute is first litigated. Thus, the trial court found the absent counties were necessary parties under (2)(i) of subdivision (a) of Code of Civil Procedure section 389, i.e., they claim "an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may (i) as a practical matter impair or impede [their] ability to protect that interest . . . ."

1. Insufficient Evidence to Support Trial Court's Finding

As indicated, the Board is required to assess Verizon's property at its full market value in January of each year. (§ 722.) The assessment method used by the Board is the cost of replacing the property less the amount of depreciation or obsolescence. (Cal. Code Regs., tit. 18, § 6, subd. (e).) Verizon does not object to the method of valuation used by the Board, but to the amount of depreciation or obsolescence assigned by the Board to Verizon's property.

The evidence the Board cited in support of its factual claim that the absent counties would be affected in subsequent tax years by a decision in this tax refund action was a copy of the Board's summary and recommendation in the underlying administrative proceeding. The summary and recommendation was not incorporated into the complaint, but was included in the record pursuant to the Board's request for judicial notice. The summary and recommendation repeated the Board's position as follows:

> "Respondent [Board] states that it used petitioner's study this year as a starting point and made specific adjustments to the study, consistent with adjustments made in the last three years, for the market value of unitary land, and for the value of non-operating property included in the study, materials and supplies, leased equipment and improvements and other non-taxable items."

The Board's "evidence" that relief given to Verizon for the 2007 tax assessment will necessarily affect future assessments is not evidence at all. Even if the Board's summary and recommendation in the underlying proceeding relied on an unequivocal statement that the Board's assessment of property in one tax year changes all future

17

assessments, and even if that statement were a recitation of evidence instead of argument, the document supporting the Board's claim was received into the record pursuant to a request for judicial notice. A court may not take judicial notice of the truth of assertions made in the document. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488, fn. 2.) This is the sole evidence cited by the Board in support of its claim that the absent counties will be affected in future tax years by the resolution of Verizon's claims for the 2007 tax year. It is insufficient to show as a matter of fact that the absent counties will be affected in future years by the resolution of the claims in this 2007 tax refund action.[4]

2. Absent Parties Have No Interest in the Subject of the Action

The pertinent question is whether the counties' absence from the litigation will impair their ability to protect their interests in the "subject of the action." (Code Civ. Proc., § 389, subd. (a)(2); *Deltakeeper, supra*, 94 Cal.App.4th at p. 1101.) The subject of the action in this case is not the appeal of an assessment by the Board. It is "an action to recover taxes . . . arising out of a dispute as to an assessment . . . ." (§ 5148.) In other

---

[4] To further illustrate why this case is not suitable for disposition on demurrer, we note several facts that might affect the assessment of the property subsequent to the 2007 tax year, and that are not evident on the face of the complaint. We do not know how the Board allocates the assessed value to each county. The complaint states merely that each county taxes Verizon according to the Board-adopted value of the property located in the county. The basis of Verizon's complaint is that the Board did not properly take obsolescence into consideration, but we do not know whether the claimed obsolescent property is located in the absent counties, or whether this is even a relevant concern. The trial court found that there was no reason to believe the interests of the counties would be aligned given the diversity among the counties, but there is no evidence of any diversity that would give rise to differing interests relating to the assessment of Verizon's property. There is no evidence that Verizon retained all of the "obsolescent" property past 2007. It could have replaced or sold such property, which would affect the assessment in a later year. In short, there are too many unknowns to conclude at the demurrer stage that the unnamed parties will be affected in the future, and that the action should be dismissed without them.

words, the subject of the action is a refund for the 2007 tax year. The absent counties have no interest in this refund action because no refund has been sought from them.

The Board's argument is not that the *judgment* will affect the interests of the absent parties, since a judgment awarding or denying refunds to the named counties cannot directly affect the absent counties, but that the absent counties will be affected by the *Board's* subsequent actions. It is true that the Board's subsequent actions will be based on the grounds for awarding or denying the refunds in this action, but the precedential effect of this case on the Board's future actions does not translate to an interest by the absent counties in the subject matter of this tax refund action.

3. Absent Counties' Interests are Protected by Named Parties

Finally, "[a] party's ability to protect its interest is not impaired or impeded as a practical matter where a joined party has the same interest in the litigation." (*Deltakeeper, supra*, 94 Cal.App.4th 1102.) The Board speculates that all of the counties might not agree with its assessment methodology or how to correct the methodology. It asserts that the counties might take a variety of different positions. It asserts that each county has its own unique interests, and the counties might not agree during the litigation or during settlement negotiations. There are no facts to support these assertions.

To the extent the absent counties may claim some interest in the subject matter of this refund action, it is an interest in seeing the property appraised as high as possible. There are no facts in the pleadings to indicate that any of the counties would have a particular interest in one methodology or another, as long as the property is appraised at its highest value, resulting in the most tax revenue. As held in *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 877, even where the absent parties' interests are not identical to the named parties, the absent parties are adequately represented for purposes of Code of Civil Procedure section 389, subdivision (a)(2)(1) if their object in the present litigation is the same. We find that to be the case here.

19

C. Indispensable Parties

The factual allegations in the complaint, together with the documents judicially noticed by the trial court do not support the trial court's finding that the absent counties were necessary parties because they claim an interest in the subject of this refund action that they will be unable to protect unless joined as defendants. A party must be a necessary party to be an indispensable party. (*Deltakeeper, supra*, 94 Cal.App.4th at p. 1100.) Because there is no factual support for a finding that the absent counties are necessary parties, there cannot be support for a finding that they are indispensable parties.

DISPOSITION

The judgment following demurrer is reversed with directions to the trial court to overrule the demurrer. Plaintiff is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      BLEASE      , Acting P. J.


We concur:


      BUTZ      , J.


      HOCH      , J.