Filed 8/14/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| SPRINT TELEPHONY PCS, L.P. et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>STATE BOARD OF EQUALIZATION et al.,<br><br>    Defendants and Respondents. | A140540<br><br>(San Francisco County<br>Super. Ct. No. CGC11511398)<br><br>ORDER DENYING PETITION<br>FOR REHEARING AND<br>MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

The opinion filed July 16, 2015, is modified by deleting the fourth sentence in the fourth paragraph under I.B. and replacing it with "The parties stipulated that the ruling disposed of the sole cause of action and that judgment could be entered against Sprint."

This modification does not change the appellate judgment. (Cal. Rules of Court, rule 8.264(c)(2).)

Appellants' petition for rehearing is denied.

_____P.J.

1

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SPRINT TELEPHONY PCS, L.P. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>STATE BOARD OF EQUALIZATION et al.,<br><br>Defendants and Respondents. | A140540<br><br>(San Francisco County<br>Super. Ct. No. CGC11511398) |

Appellants Sprint Telephony PCS, L.P., Sprint Spectrum L.P., Wirelessco, L.P., Nextel of California, Inc., and Nextel Boost of California, LLC (collectively referred to as Sprint or the company) filed this action seeking a refund on taxes they paid on property assessed by respondent State Board of Equalization (the Board). The Legislature has mandated that for a telephone company to file such a judicial tax-refund action it must first file a petition for reassessment with the Board stating "in the petition [that] it is intended to . . . serve [as a claim for refund]." (Rev. & Tax. Code, § 5148, subds. (f), (g)(1).)[1] Sprint filed a petition for reassessment but did not state in it that the petition was also intended to serve as a claim for refund. Relying on the plain language of the statute, the trial court granted summary judgment in the Board's favor. We affirm. Although requiring a telephone company to state in its reassessment petition that it is claiming a refund as a prerequisite for filing a judicial tax-refund action serves limited practical purposes, the requirement is plain and compulsory.

_____

[1] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

A. *The Statutory Framework for State-assessed Property.*

California property owners who dispute the government's assessment of their property for tax purposes may generally request to have the property reassessed at a lower valuation and request a refund of paid taxes that were based on an excess valuation. They must make *both* requests before bringing a judicial tax-refund action. In many situations, the same government body considers these two requests and can grant or deny the relief sought. And in many situations, property owners may submit the two requests either together or separately. When taxpayers of *county*-assessed property seek reassessments and refunds, for example, they may either state in their applications for reassessment that they want a refund *or* they may file a separate claim for refund with the county. (§ 5097, subds. (b) & (c); see also §§ 1603-1604.)

This case involves a unique assessment-and-refund procedure applicable to certain entities, including telephone companies such as Sprint, that typically hold property in multiple counties.[2] The California Constitution requires the Board annually to assess telephone companies' property at fair-market value. (Cal. Const., art. XIII, § 19; see also § 721.) The Board's assessment is allocated among the jurisdictions in which the property is located, and the assessment roll is transmitted to city and county auditors.

---

[2] Specifically, the procedure applies to "(1) pipelines, flumes, canals, ditches, and aqueducts lying within 2 or more counties and (2) property, except franchises, owned or used by regulated railway, telegraph, or telephone companies, car companies operating on railways in the State, and companies transmitting or selling gas or electricity." (Cal. Const., art. XIII, § 19; see also § 721.) Those entities' property is assessed on a unitary basis, that is, the property's " 'value depends on the interrelation and operation of the entire utility as a unit. Many of the separate assets would be practically valueless without the rest of the system. Ten miles of telephone wire or one specially designed turbine would have a questionable value, other than as scrap, without the benefit of the rest of the system as a whole.' " (*ITT World Communications, Inc. v. City and County of San Francisco* (1985) 37 Cal.3d 859, 863.) In this opinion, we refer to the procedure's applicability to telephone companies because Sprint is one, but we recognize that the procedure applies to other types of state assessees as well.

3

(§§ 722, 745; *Verizon California Inc. v. Board of Equalization* (2014) 230 Cal.App.4th 666, 672 (*Verizon California*).)  Each county is responsible for collecting the taxes owed by the telephone company in that county.  (§§ 2152, 2601-2602.)  In this way, the Board and the individual counties play separate roles.  The Board is responsible for assessing the property at a statewide level, but the individual counties are responsible for collecting the taxes that have been allocated to them.

When the Board assesses a telephone company's property, it must notify the company by mail of the assessed valuation and the date a reassessment petition is due for contesting it.  (§ 731.)  If the Board grants a reassessment petition by reducing the property's assessed value, it enters the revised valuation on the tax roll for the fiscal year in which the determination is made or for the following fiscal year.  (§ 744, subd. (b).)  If the reduced assessment is entered on the roll for the following fiscal year, the reduction is to reflect the difference between the original and new assessed values, plus nine percent of that difference in lieu of interest.  (§ 744, subd. (c).)

Before 1987, there was a three-step process for seeking refunds of taxes paid on excess valuations of property owned by telephone companies.  The company was required to file (1) a petition for reassessment with the Board, (2) a claim for refund in each county where it had property, and (3) an action for refund in the superior court of each county in which it sought a refund.  (*Verizon California*, *supra*, 230 Cal.App.4th at p. 678, relying on Legis. Analyst, analysis of Assem. Bill No. 2120 (1987-1988 Reg. Sess.) Sept. 2, 1987, p. 2.)  This meant that numerous claims and judicial tax-refund actions were sometimes necessary.  (E.g., *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283.)  Some legislators considered this process to be "cumbersome" and believed it "overburdened state assessees and counties."  (*Verizon California*, at p. 678, relying on Off. of Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 2120 (1987-1988 Reg. Sess.) as amended June 3, 1987, p. 2.)

A judicial tax-refund action for taxes levied on telephone-company property is now governed by section 5148, which was enacted in 1987 "to streamline the appeals process for state assessees."  (*Verizon California*, *supra*, 230 Cal.App.4th at p. 678; see

4

also Stats. 1987, ch. 1262, § 6.)  Under this statute, telephone companies are no longer required to file refund claims in each county before seeking judicial relief.  But they must still comply with certain procedural requirements, including first filing a petition with the Board for a reassessment and paying any disputed tax.  (§ 5148, subds. (e) & (g).)  The reassessment petition must state that a refund is claimed.  Section 5148, subdivision (f) provides:  "A timely filed petition for reassessment . . . shall constitute a claim for refund *if the petitioner states in the petition it is intended to so serve*."  (Italics added.)  Subdivision (g), in turn, sets forth the applicable statute of limitations:  "The action [for refund] shall be commenced only after payment of the taxes in issue and within four years after the latest of the dates that the State Board of Equalization mailed its decision or its written findings and conclusions on the following:  [¶] (1) A petition for reassessment filed under section 741 *and intended to constitute a claim for refund*."  (Italics added.)  In other words, the statute of limitations on a judicial tax-refund action is four years, and the limitations period begins to run when the Board mails its decision on a reassessment petition that stated a refund was claimed.  (§ 5148, subds. (f) & (g).)

The plain language of these subdivisions requires telephone companies to file a reassessment petition with the Board stating a refund is claimed as a prerequisite for bringing a judicial tax-refund action.  For simplicity and readability, we shall refer to this prerequisite as the "the notice requirement."  The reasons for the notice requirement are not intuitive because the Board does not issue refunds.  (§ 5148, subd. (i).)  Why should the Board need to be told that a refund is claimed when only the counties, not the Board, issue refunds?

When the legislation enacting section 5148 was being considered, the Board sent a letter to Governor George Deukmejian raising concerns about the notice requirement.  The letter explained that the proposed legislation "provides that a petition for reassessment may be designated a claim for refund by the petitioner, but fails to provide for a procedure when the petition is not designated a claim for refund and the assessee later decides to litigate its rights.  If failure to designate the petition as a claim for refund

5

will cut off all future litigation rights, that should be clearly stated in order to avoid entrapping taxpayers."

After section 5148 was signed into law over the Board's objection, the Board implemented a measure to help state assessees avoid these entrapment concerns by creating a standard, one-page form for reassessment petitions that could hardly have made it easier for telephone companies to satisfy the notice requirement (standard form BOE-529-A). The version of this form used by Sprint included the statement "This is a request for refund according to Revenue and Taxation Code section 5148(f)" next to two boxes, one for "Yes" and one for "No."[3]

Once a telephone company satisfies all the applicable prerequisites, it may bring a judicial tax-refund action by filing a single complaint (§ 5148, subd. (a)) that names the Board and all the counties from which a refund is sought (*id.*, subd. (b)). Allowing these actions to be brought in one county, rather than requiring a separate action in every county in which the telephone company has property, greatly reduces the number of judicial tax-refund actions that telephone companies must file to obtain tax refunds.

B. *Sprint's Attempt to Seek a Refund.*

In May 2008, the Board notified Sprint that it had assessed the value of the company's unitary property in the state at $2.5461 billion. Two months later, Sprint filed with the Board a reassessment petition contending that the value was actually about half the amount assessed by the Board, or $1.343511 billion. Included in the petition was the Board's standard form BOE-529-A, which contains seven sections. All sections except one—section 4, which as described above is for designating a reassessment petition as a claim for refund—were filled out. Neither box ("Yes" or "No") was checked to indicate that the petition was to serve as a claim for refund, and Sprint filed nothing else with its petition to signify that it wanted the petition to be considered a claim for refund. Instead, the petition focused solely on reducing the assessed valuation of its property. Sprint later alleged that it "intended" its reassessment petition to serve as a claim for refund. But the

---

**3** As we discuss in more detail below, not everything the Board has done has been helpful in providing guidance on the notice requirement.

Board treats a petition for reassessment as a claim for refund only when the petition indicates that it is to serve as one.[4]

In December 2008, the Board granted Sprint's reassessment petition in part by reducing the assessed value of Sprint's property to $2.0397 billion. This reduced assessment was entered on the tax roll for the following fiscal year. (§ 744, subds. (b) & (c).) In February 2010, Sprint filed refund claims with each of the 51 counties where it has property even though section 5148 does not contemplate such filings. The Board received notices of these claims, and this was presumably the first time the Board learned that Sprint was claiming a tax refund. At least 10 of the counties rejected Sprint's claims, and no refunds were granted.

Sprint filed this action in June 2011 against the Board and 51 counties.[5] As amended, the complaint sought a judgment ordering reassessment of Sprint's property at a value less than $1.343511 billion (the value Sprint originally submitted to the Board in its reassessment petition). Sprint also sought a total tax refund of at least $9 million under section 5148.

The counties responded by filing demurrers, which the trial court overruled.[6] The Board later filed a motion for summary judgment arguing that Sprint had failed to exhaust its administrative remedies by not complying with the notice requirement. The trial court agreed and granted the motion. The parties stipulated that the ruling disposed

---

[4] Petitions for reassessment commonly do not request a refund. A "majority" of petitions filed with the Board are for reassessment only, and anywhere from 30 to 50 percent of petitions do not include a checkmark next to either the "Yes" or "No" box on form BOE-529-A.

[5] The complaint named the following counties, which are respondents in this action: Alameda, Amador, Butte, Calaveras, Colusa, Contra Costa, El Dorado, Fresno, Glenn, Humboldt, Imperial, Inyo, Kern, Kings, Lake, Lassen, Los Angeles, Madera, Marin, Mariposa, Merced, Mono, Monterey, Napa, Nevada, Orange, Placer, Plumas, Riverside, Sacramento, San Benito, San Bernardino, San Diego, San Francisco, San Joaquin, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Shasta, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Tulare, Ventura, Yolo, and Yuba.

[6] By order dated March 27, 2012 in case No. A134533, this court denied a writ petition filed by the counties challenging the trial court's order.

of the sole cause of action and that judgment could be entered against all defendants. The county defendants have joined the Board's brief in this court.

## II.
### DISCUSSION

Although Sprint's appellate briefs span more than 85 pages, the company's arguments boil down to the proposition that the company was not required to comply with the notice requirement because it serves no real purpose and the counties were not prejudiced. The two trial judges who considered this issue were sympathetic to Sprint's argument. The judge who ruled on the demurrers considered Sprint's potential waiver of litigation rights by failing to check a box on a preprinted form to be based on a "hyper-technical reading of [section] 5148," and the judge who ruled on the subsequent motion for summary judgment requested supplemental briefing and remarked this was "a tough one" because "the State has this position you didn't check the box, so you get hit for millions of dollars."

We were similarly concerned with the fairness of a strict application of the notice requirement, and we sent the parties a letter asking them to be prepared to discuss at oral argument whether legitimate reasons exist for it. After considering the briefing and counsels' arguments, we conclude that the notice requirement, while serving few practical purposes, is not irrational and must be enforced in accordance with the statute's plain language.

Sprint itself acknowledges that section 5148, subdivisions (f) and (g) contain a "literal requirement" that an assessee give notice that its petition is intended to serve as a claim for refund in order to maintain a judicial tax-refund action. But it contends the "literal prerequisite to the commencement of a tax refund action" should not apply here, and it goes so far as to characterize the notice requirement as a "fictional administrative tax refund procedure." We are not persuaded.

California Constitution, article XIII, section 32, provides: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature*." (Italics added.) "This

8

constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." (*Woosley v. State of California* (1992) 3 Cal.4th 758, 789.) "Because article XIII, section 32 vests the Legislature with plenary control over the manner in which tax refunds may be obtained, a party 'must show strict, rather than substantial, compliance with the administrative procedures established by the Legislature. [Citation.]' [Citation.]" (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299.)

In granting the Board's motion for summary judgment, the trial court relied on this well-settled principle requiring strict compliance with tax statutes. Sprint contends that it should be excused from such compliance because the notice requirement is not a "substantive administrative tax refund procedure" and is therefore not a "jurisdictional prerequisite" to filing a judicial tax-refund action. (Boldface and solid capitalization omitted.) Instead, Sprint argues, courts "must analyze each statute to determine what the Legislature intended."

We begin by observing that Sprint is not contending that it should be excused from the notice requirement on the basis of substantial compliance. Indeed, it could not so contend because it admits that there was *no* compliance with the notice requirement. Sprint points to nothing in either its reassessment petition or in any other document demonstrating that it was claiming a refund when it filed its petition. It is therefore imprecise to say that Sprint forfeited its refund simply because it failed to check a box; it is more precise to say that Sprint forfeited its refund because it failed to indicate in any way when it filed its reassessment petition that it wanted a tax refund.[7]

---

[7] At oral argument, and consistent with the text of section 5148, subdivision (f) that provides a reassessment petition shall constitute a claim for refund if a petitioner so states "in the petition" (as opposed to on any specific form), the Board's appellate counsel represented that even without the "Yes" box being checked the Board would consider the notice requirement satisfied if there was some other indication on the petition or in a cover letter that the telephone company wanted the petition to be considered a claim for refund.

9

Sprint essentially asks us to conclude that the Legislature did not intend to require compliance with the notice requirement. We cannot do so. A court's role in construing a statute is to determine the Legislature's intent so as to effectuate the law's purpose. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000.) The court first looks to the words of a statute, "giving the language its usual, ordinary meaning. If there is no ambiguity in the language, *we presume the Legislature meant what it said*, and *the plain meaning of the statute governs*." (*Ibid.*, italics added.) "[R]esort to legislative history is appropriate *only* where statutory language is ambiguous." (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29, italics added.) Here, Sprint identifies no ambiguity in the statute and acknowledges that its literal terms require a telephone company to request a refund with the Board as a prerequisite to filing a judicial tax-refund action. We must conclude that the legislative intent is reflected in the statute's plain language and meaning.

Sprint stresses that counties are not authorized to pay refunds based on petitions filed with the Board. It argues that, as a result, a claim to the Board "is not part of a procedure establishing a substantive right to recover taxes, and for that reason cannot serve as a jurisdictional prerequisite to the commencement and maintenance of a tax-refund action under section 5148." As we understand it, this argument is that the Board's lack of authority to pay refund claims renders the notice requirement pointless. But this is just another way of arguing that we should ignore the plain meaning of the statute. And we may not do so even accepting that, as a practical matter, the Board does not notify counties that a telephone company claims a refund from them.

In any event, we cannot say the notice requirement is entirely pointless even though it advances few practical purposes. The Board is the entity charged with assessing telephone-company property, and the judicial-refund process requires that all affected counties be included in a single action. (§ 5148, subds. (a) & (b).) Since the Board is a mandatory party in any such action, requiring telephone companies to notify it that they are claiming a refund informs the Board that it may face litigation on the issue. (§ 5148, subd. (b) ["action *shall name* the board"], italics added.) Furthermore, requiring

telephone companies to state in their reassessment petitions that they are claiming a refund enabled the Legislature to establish a clear, uniform, and early date—the day the Board mails its reassessment decision—for the start of the statute of limitations period for a judicial tax-refund action. (§ 5148, subds. (f) & (g).)

Sprint's argument about when the statute of limitations begins to run where a telephone company fails to comply with the notice requirement is confusing and inconsistent with section 5148. The company argues, without citing any direct statutory authority, that the statute of limitations would begin to run when the Board mails its decision on a reassessment petition, whether or not the petition was designated as a claim for refund. Sprint alternatively contends that if we conclude that the statute of limitations under section 5148 is triggered only where a telephone company complies with the notice requirement, we should apply the catchall four-year limitations period in Code of Civil Procedure section 343 where a telephone company fails to comply with the notice requirement. In those situations, Sprint argues, the limitations period would begin to run when a company pays its taxes based on the inflated assessment. But we believe the Legislature contemplated only one procedure and meant what it said when it provided that a judicial tax-refund action must be initiated four years after the Board mails its decision on a reassessment petition that complied with the notice requirement. (§ 5148, subd. (g).)

In a related argument, Sprint complains that it is inconsistent for the law to insist on satisfaction of the notice requirement when the Board does not inform counties when petitions seek refunds and notifies them only of *reassessment* decisions. (§ 744, subd. (a).) True enough, counties have no right to participate in the administrative reassessment proceeding and become involved only when they are named in a judicial tax-refund action. (§ 5148, subds. (a) & (b); *Verizon California*, *supra*, 230 Cal.App.4th at p. 676.) We admit that we can discern few, if any, practical benefits to *the counties* when telephone companies comply with the notice requirement, and we see little practical harm to them when they do not. But one of the purposes of section 5148 was to make the process more efficient by eliminating the requirement that notice of refunds be

11

filed in each affected county. (*Verizon California*, *supra*, 230 Cal.App.4th at p. 678.) Regardless of whether the notice requirement benefits counties, the new process makes it easier for telephone companies by allowing them to file one notice rather than multiple notices. While the Legislature could have undoubtedly enacted a statute allowing telephone companies to initiate judicial tax-refund actions without having first stated a claim for refund in their reassessment petitions, we see no intrinsic inconsistency in the procedure it did enact. In short, we cannot ignore the plain language of section 5148, subdivisions (f) and (g) even accepting that the Board does not typically inform counties when refunds are claimed in reassessment petitions.[8]

Sprint relies on inapposite authority involving the different prerequisites for filing a judicial tax-refund action for taxes paid on *county-assessed* property. (E.g., § 5097; *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1308-1309 [process to obtain refund from county separate from process of seeking reduced assessment from county].) The Legislature has specifically provided, however, that the refund process for county-assessed property does not apply to state-assessed property. (§ 5142, subd. (a).)

Sprint also places undue reliance on *Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769 (*Geneva Towers*), which analyzed the six-month statute of limitations in section 5141, applicable to tax-refund actions against individual cities or counties. That statute provides that a tax-refund action shall be commenced within six months after a city or county rejects a refund claim (§ 5141, subd. (a)) and that a claimant "may" consider the claim rejected and file suit if the city or county fails to mail notice of action on the claim within six months (*id.*, subd. (b)). *Geneva Towers* held that although a claimant *may* bring an action six months after filing a refund claim when it was not notified of action on the claim, it is not *required* to do so. (29 Cal.4th at p. 774.) Thus, under section 5141 the limitation period does not begin to

---

[8] We also reject Sprint's argument that the notice requirement conflicts with California Constitution, article XIII, section 32's provision requiring taxes to be paid before a taxpayer may maintain a judicial refund action. Requiring notice in a reassessment petition that a refund is sought in the event of a valuation reduction does not interfere in the least with this provision.

run until the public entity denies the claim for refund, even if it takes no action on the claim for several years. (*Geneva Towers,* at pp. 772, 774, 782.) The analysis in *Geneva Towers* is straightforward and inapplicable here. The court found that a taxpayer filing a refund claim under the statutory scheme could reasonably expect that no further action was required until the public entity ruled on the claim. (*Id.* at p. 781.) Accordingly, the court concluded that requiring the taxpayer to file suit within six months of the claim despite a lack of action from the entity "would create a trap for the unwary." (*Ibid.*)

Sprint contends that the notice requirement in section 5148 likewise creates "unpleasant and unfair surprises for many claimants." (*Geneva Towers*, *supra*, 29 Cal.4th at p. 781.) But in *Geneva Towers* the unpleasant and unfair surprise to the taxpayer was the government's unreasonable interpretation of a statute. Here, there can be no similar surprise because, as Sprint concedes, section 5148 is unambiguous. (E.g., *Verizon California*, *supra*, 230 Cal.App.4th at p. 673 [before initiating tax-refund action under § 5148, telephone company submitted a petition to the Board naming counties where property was located and "stated that the petition was a request for refund"].) We agree with the Attorney General that "[t]here is no way around the fact that subdivisions (f) and (g) [of section 5148] plainly reference and contemplate the assessee's filing of a petition that is intended to also serve as a claim for refund as a prerequisite for a suit for refund."

We recognize that the application of the notice requirement in section 5148, subdivisions (f) and (g) means that Sprint forfeited its right to a refund because it failed to check the box on its reassessment petition or otherwise notify the Board that it intended its petition to serve as a claim for refund. And we note that since the initiation of this litigation, the Board has revised form BOE-529-A to make even clearer the rights that are forfeited when a reassessment petition fails to state that it is also a refund claim.

13

(<http://www.boe.ca.gov/pdf/boe529a.pdf> [as of July 16, 2015].)[9] The form still includes a section where the petitioner may elect to state that the reassessment petition is also a request for refund. But instead of including both "Yes" and "No" boxes, the form now includes only a "Yes" box, followed by this direction: "Checking this box preserves the right to recover taxes arising out of a disputed assessment." This provides a helpful explanation about the significance of failing to check the "Yes" box.

But with or without this form change, the requirements of section 5148, subdivisions (f) and (g) are plain that a telephone company wanting to preserve its right to file a judicial tax-refund action is required to state that its reassessment petition is also to serve as a claim for refund. Because Sprint failed to do so, the trial court properly granted summary judgment.

Before we conclude, we mention one last thing: the Board's State Assessment Manual includes a description of claim-refund procedures that is both confusing and inaccurate. The manual states that assessees may file refund claims with the affected counties even when they have not complied with the notice requirement. Although this statement comports with the statutory scheme for filing refund actions on *county*-assessed property under section 5141, subdivision (a), it does not comport with the statutory scheme for filing a refund action on *state*-assessed property under section 5148. Because the manual does not explain this limitation, telephone companies could reasonably believe that the statement applies to them. We are deeply concerned about the inaccuracy

---

[9] On the court's own motion, we take judicial notice of the revised form. (Evid. Code, § 452, subd. (c) [permissive judicial notice for "[o]fficial acts of the . . . executive . . . departments" of any state]; see also *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 904, fn. 5 [judicial notice of Judicial Council forms].)

of the statement, and we urge the Board to move quickly to correct it and to take other appropriate measures to prevent state assessees from relying on it.[10]

## III.
### DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

---

[10] As concerning as this misleading statement is, it has no effect in this case because Sprint did not rely on it.  Although Sprint submitted refund claims to counties, it claims to have done so only out of "an abundance of caution" and it expressly disavowed the applicability of statutes governing county-assessed property.  When the Board below argued the applicability of a six-month statute of limitations period described in the manual, Sprint correctly noted that the manual directly conflicts with section 5148 and was thus "clearly illegal."

15

 

_____

Humes, P.J.


We concur:


_____

Dondero, J.


_____

Banke, J.


*Sprint v. State Board of Equalization* (A140540)


16

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Ernest H. Goldsmith |
| Counsel for Appellants: | Richard Norman Wiley |
| Counsel for Respondent State Board of Equalization: | Office of the Attorney General, Kamala D. Harris, Attorney General of California, Paul D. Gifford, Senior Assistant Attorney General, Joyce E. Hee, Supervising Deputy Attorney General, Karen Wing Ka Yiu, Deputy Attorney General, Robert Warren Lambert, David Lew |
| Counsel for Respondent City and County of San Francisco: | Office of City Attorney, Dennis J. Herrera, City Attorney, Jean H. Alexander, Chief Tax Attorney, Thomas S. Lakritz, Deputy City Attorney |
| Counsel for Respondent County of Alameda: | Office of County Counsel, John Thomas Seyman, Deputy County Counsel |
| Counsel for Respondent County of Amador: | Office of County Counsel, Gregory George Gillott, Deputy County Counsel |
| Counsel for Respondent County of Butte: | Office of County Counsel, Bradley Justin Stephens, Deputy County Counsel |
| Counsel for Respondent County of Calaveras: | Office of County Counsel, David Edward Sirias, Assistant County Counsel |
| Counsel for Respondent County of Colusa: | Office of County Counsel, Marcos Alfonso Kropf, County Counsel |
| Counsel for Respondent County of El Dorado: | Office of County Counsel, Michael John Ciccozzi, Deputy County Counsel |
| Counsel for Respondent County of Fresno: | Office of County Counsel, Peter James Wall, Deputy County Counsel |

| | |
|---|---|
| Counsel for Respondent County of Glenn: | Office of County Counsel, Huston T. Carlyle, County Counsel |
| Counsel for Respondent County of Humboldt: | Humboldt County Counsel, Scott Alexander Miles |
| Counsel for Respondent County of Imperial: | Office of County Counsel, Geoffrey Patrick Holbrook |
| Counsel for Respondent County of Inyo: | Inyo County Counsel, Dana Marie Crom |
| Counsel for Respondent County of Kern: | Office of County Counsel, Jerri Sue Bradley, Deputy County Counsel |
| Counsel for Respondent County of Kings: | Office of County Counsel, Colleen June Carlson |
| Counsel for Respondent County of Lake: | Office of County Counsel, Anita Louise Grant |
| Counsel for Respondent County of Lassen: | Office of County Counsel, Rhetta Kay Vander Ploeg |
| Counsel for Respondent County of Los Angeles: | Office of County Counsel, Albert Ramseyer |
| Counsel for Respondent County of Madera: | Madera County Counsel, Douglas William Nelson |
| Counsel for Respondent County of Marin: | Office of County Counsel, Sheila Marise Shah Lichtblau, Deputy County Counsel |
| Counsel for Respondent County of Mariposa: | Mariposa County Counsel, Steven Wayne Dahlem, County Counsel |
| Counsel for Respondent County of Merced: | Office of County Counsel, David Albert Olsen |
| Counsel for Respondent County of Mono: | Office of County Counsel, Marshall Skaggs Rudolph, County Counsel, John Carl Vallejo |

| | |
|---|---|
| Counsel for Respondent County of Monterey: | Office of County Counsel, Jerrold Allen Malkin |
| Counsel for Respondent County of Napa: | Office of County Counsel, Susan Beth Altman |
| Counsel for Respondent County of Nevada: | Nevada County Counsel, Alison Alberta Barratt-Green |
| Counsel for Respondent County of Orange: | Orange County Counsel, Laurie Ann Shade |
| Counsel for Respondent County of Placer: | Office of County Counsel, Brian Reid Wirtz |
| Counsel for Respondent County of Plumas: | Office of County Counsel, Richard Crain Settlemire |
| Counsel for Respondent County of Riverside: | Riverside County Counsel, Pamela Jean Walls |
| Counsel for Respondent County of Sacramento: | Office of County Counsel, Diane Elizabeth McElhern |
| Counsel for Respondent County of San Benito: | San Benito County Counsel, Matthew Walter Granger |
| Counsel for Respondent County of San Bernardino: | Office of County Counsel, Kevin Leigh Norris |
| Counsel for Respondent County of San Diego: | Office of County Counsel, Thomas Edward Montgomery |
| Counsel for Respondent County of San Joaquin: | Office of County Counsel, Robert Emmett O'Rourke |
| Counsel for Respondent County of San Luis Obispo: | Office of County Counsel, Rita L. Neal |

| | |
|---|---|
| Counsel for Respondent County of San Mateo: | Office of County Counsel, Rebecca Maxine Archer |
| Counsel for Respondent County of Santa Barbara: | Santa Barbara County Counsel, Anne Michele Rierson |
| Counsel for Respondent County of Santa Clara: | Office of County Counsel, Neysa Ann Fligor |
| Counsel for Respondent County of Santa Cruz: | Office of County Counsel, Jason M. Heath |
| Counsel for Respondent County of Shasta: | Office of County Counsel, David Morgan Yorton, Jr. |
| Counsel for Respondent County of Siskiyou: | Office of County Counsel, Dennis M. Tanabe |
| Counsel for Respondent County of Solano: | Office of County Counsel, Carolyn Scarlata Keefe |
| Counsel for Respondent County of Sonoma: | Office of Sonoma County Counsel, Jennifer Christina Klein, Lauren Borella, Deputy County Counsels |
| Counsel for Respondent County of Stanislaus: | Office of Stanislaus County Counsel, Dierdre Elise McGrath |
| Counsel for Respondent County of Sutter: | Office of County Counsel, William Joseph Vanasek |
| Counsel for Respondent County of Tehema: | Tehama County Counsel, Arthur J. Wylene |
| Counsel for Respondent County of Tulare | Office of County Counsel, Julia C. Langley |
| Counsel for Respondent County of Ventura: | Office of County Counsel, Linda Kathryn Ash |

Counsel for Respondent
County of Yolo:     Office of County Counsel, Daniel Carl Cederborg

Counsel for Respondent
County of Yuba:     Office of County Counsel, Maria Bryant-Pollard