Filed 5/9/25  La Paloma Generating Co. v. Cal. State Bd. of Equalization CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LA PALOMA GENERATING COMPANY, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE BOARD OF EQUALIZATION,<br><br>Defendant and Appellant. | B330643<br><br>(Los Angeles County Super. Ct. No. BC645390) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed.

Greenberg Traurig and Colin Fraser; CLMG Corp. and Robert A. Ackermann, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Brian D. Wesley, Supervising Deputy Attorney General, and Hutchison B. Meltzer, Deputy Attorney General, for Defendant and Appellant.

\* \* \* \* \* \*

A power plant located in Kern County (the County) sued the County and the State Board of Equalization (the Board) for property tax refunds for tax years 2012 through 2016 based on the Board's alleged overassessment of the value of its property. Following a bench trial, the trial court concluded that the Board did over-assess the property during those tax years, but based on a prior summary adjudication ruling, the court limited (and hence capped) the amount of the power plant's tax refund (1) for tax year 2012, to the amount of the assessment to which the power plant agreed during administrative proceedings before the Board, and (2) for tax years 2013 through 2016, to the amount of the assessments the power plant requested and justified in its petitions initiating administrative proceedings before the Board. The trial court went on to calculate the property tax refunds owed to the power plant based on these caps and ordered the County to pay the refunds with interest. The power plant appeals, arguing that the caps on the assessments are invalid. The Board cross-appeals, arguing that the trial court's role was not to calculate the amount of the refunds, that the court's calculation was incorrect, and that its imposition of a 10 percent post-judgment interest rate was also incorrect. We conclude the caps are valid and that the Board lacks standing to challenge the judgment ordering the County (not the Board) to pay the refunds with interest. We accordingly affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### I.      The Property and Its Taxes

#### A.      *The power plant*

Starting in 2003, La Paloma Generating Company, LLC (La Paloma) operated a four-turbine, gas-fueled power plant in the County.  The 400-acre site was spread over 10 different parcels for the assessment of property taxes.

#### B.      *Property tax assessments*

Because La Paloma operated an electric generating facility, the calculation of its property taxes is divided between the Board and the County:  The Board is responsible for assessing the value of the property, and the County is responsible for calculating and then collecting the property tax from La Paloma based on that assessed value.  (Cal. Const., art. XIII, § 19; Rev. & Tax. Code, §§ 721.5, 755-756, 758.)[1]

The Board assessed the value of La Paloma's property for tax years 2012 through 2016—the pertinent tax years in this case—as follows:

| Tax Year | Assessment |
|----------|------------|
| 2012     | $401,900,000 |
| 2013     | $333,300,000 |
| 2014     | $300,200,000 |
| 2015     | $290,800,000 |
| 2016     | $168,800,000 |

The County calculated and then billed La Paloma the corresponding property tax amounts.  La Paloma paid the full

---

[1]      All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

3

amount of property taxes to the County for tax years 2012 to 2016; the total came to $12,601,439.

## II. Administrative Proceedings Seeking Tax Refunds

### A. *For tax year 2012*

In July 2012, La Paloma filed a "Petition for Unitary Property Reassessment" with the Board. In that petition, La Paloma "[o]pin[ed]" that the proper assessment value of its property was $338,902,950, and listed three reasons why the Board's assessment was incorrect—namely, that (1) "[t]he unitary value exceed[ed] the full value of the property," (2) "[t]he unitary value has been incorrectly allocated," and (3) the "[v]alue of unitary property has been incorrectly calculated." La Paloma attached a consultant-prepared report justifying its assessment opinion of $338,902,950. La Paloma did not check the box on the petition indicating that its petition also constituted a "request for refund" from the County of the taxes it had paid for 2012, but La Paloma separately filed a claim for a refund with the County.

La Paloma asked to meet with the State-Assessed Properties Division of the Board, and at that meeting agreed to a "joint recommended unitary [assessment] value of $377,600,000. As a result of this agreement, La Paloma withdrew its earlier request for oral argument before the Board, and the Board's Appeals Division recommended that the Board adopt the agreed-upon assessment value in a "summary decision."

The Board voted to reassess the property at the agreed-upon value.

### B. *For tax years 2013 through 2016*

In July of 2013, 2014, 2015, and 2016, La Paloma filed petitions for property reassessment with the Board. In the

4

petitions, La Paloma "[o]pin[ed]" that the property value should be assessed for those tax years as follows:

| Tax Year | Board's Assessment | La Paloma's Requested Reassessment |
|---|---|---|
| 2013 | $333,300,000 | $279,770,000 |
| 2014 | $300,200,000 | $250,800,000 |
| 2015 | $290,800,000 | $241,762,000 |
| 2016 | $168,800,000 | $73,347,596 |

In its 2013 petition, La Paloma listed the same three reasons why the Board's assessment value was incorrect as it had alleged in its 2012 petition—namely, that (1) "[t]he unitary value exceed[ed] the full value of the property," (2) "[t]he unitary value has been incorrectly allocated," and (3) the "[v]alue of unitary property has been incorrectly calculated." In its 2014, 2015, and 2016 petitions, La Paloma listed just the first and third reasons for why the Board's assessment value was incorrect. To each petition from 2013 through 2016, La Paloma attached a consultant-prepared report justifying its assessment opinion. La Paloma also checked a box on each petition indicating that the petition should also serve as a "request for [a tax] refund" from the County.

The Board reaffirmed its initial assessment of the property's value for 2013, 2014, and 2015, but reduced the assessment for 2016 to $136,100,000.

## III. La Paloma's Tax Refund Action

### A. *Pleadings*

In January 2017, La Paloma filed a lawsuit against the Board and the County seeking property tax refunds for tax years

5

2012 through 2016.[2]  In the operative first amended complaint, La Paloma alleged that it was entitled to a refund in each of the tax years because the Board had over-assessed the value of its property.

The Board's answer, to which the County filed a joinder, raised two affirmative defenses pertinent to this appeal—namely, that (1) La Paloma had not exhausted its administrative remedies for the 2012 tax year because it was seeking a lower assessment value in the refund action than the value it had agreed to during the administrative proceedings, and (2) the trial court "lack[ed] jurisdiction to grant [La Paloma] a refund" for the 2013 through 2016 tax years because La Paloma was seeking a lower assessment than the value it had requested before the Board.

### B.    *Motion for summary adjudication*

In July 2020, the Board moved for summary adjudication on those two pertinent affirmative defenses.[3]  After briefing and a hearing, the trial court granted the motion.[4]  With respect to the 2012 tax year, the court ruled that "La Paloma cannot agree to a unitary [assessment] value of [its power plant property] with the [Board] and then raise new issues on appeal [to the trial court] as to that agreed upon valuation."  With respect to the 2013 through 2016 tax years, the court ruled that La Paloma's challenge to the Board's assessment value must be limited to the amount it

---

[2]    A liquidating trustee became the "judicial substitute" for La Paloma after the company filed for bankruptcy.

[3]    The County did not join in the motion.

[4]    La Paloma filed a petition for writ of mandate challenging the summary adjudication ruling; we denied the petition.

"'properly request[ed]'" before the Board. The court's reasoning borrowed heavily from an earlier ruling of the bankruptcy court that had presided over La Paloma's prior bankruptcy proceeding.[5]

## C.  *Trial*

In May 2022, the matter proceeded to a six-day bench trial on the correct assessment value of La Paloma's power plant property. The County did not appear at the trial. Following post-trial briefing, the trial court issued a 33-page proposed statement of decision in February 2023. While the court ruled that the Board's assessment values of La Paloma's property had been incorrect for six different reasons, and also ruled that the assessment values La Paloma offered at trial were correct, the court went on to apply the prior summary adjudication rulings to (1) deny any tax refund for the 2012 tax year "because [La Paloma] failed to exhaust its administrative remedy in that year by agreeing with [Board] staff to provide a non-binding recommendation of value," and (2) limit the assessment value from which a tax refund would be calculated for the 2013 through 2016 tax years to the "opinions of value that La Paloma included in the assessment [petitions] that it submitted to [the Board] at the very beginning of the administrative appeal process."

---

[5]  The Board had made a similar motion before the bankruptcy court, and that court ruled in the Board's favor on the merits of the Board's affirmative defenses while simultaneously recognizing that it did not have jurisdiction to resolve the parties' property tax dispute. On appeal from that ruling, the federal district court ruled that the bankruptcy court's resolution of the tax dispute was "void" due to its admitted lack of jurisdiction over that dispute, but noted that the California Superior Court "will have to decide whether to reach the same conclusions" on the Board's affirmative defenses that the bankruptcy court did.

Without showing its math applying those capped assessment values, the court then set forth the following property tax refund amounts to be paid to La Paloma:

| Tax Year | Refund Amount |
|----------|---------------|
| 2012 | $0 |
| 2013 | $778,293 |
| 2014 | $701,638 |
| 2015 | $678,032 |
| 2016 | $1,104,112 |

The court also found that La Paloma was entitled to pre-judgment interest at a rate of 3 percent, accruing from the date La Paloma had submitted its proposed findings after the trial.

The Board's sole objection to the trial court's proposed statement of decision was to clarify that *the County*—and not the Board—was "responsible for any refund."

On May 25, 2023, the trial court entered judgment. The judgment, drafted by La Paloma as instructed by the court, ordered the County to refund La Paloma the amounts the court had set forth in its statement of decision, yet at the same time also "ordered" "[t]he County" "to calculate the refunds . . . due to La Paloma." The court ordered the County to pay post-judgment interest at a rate of 10 percent.

**D.    *Appeals***

La Paloma filed a timely notice of appeal. The Board filed a timely notice of cross-appeal. The County did not appeal.

## DISCUSSION

La Paloma's appeal challenges the trial court's capped assessments of the value of the property, while the Board's cross-

8

appeal challenges the court's calculation of the refund based on those assessments as well as the post-judgment interest rate.

We address the Board's cross-appeal first. The Board contends that the trial court erred by (1) making the refund calculations itself rather than leaving that task for the County, (2) calculating the refund for the 2015 tax year based on an assessment value that was higher than the value on which the taxes La Paloma paid to the County were calculated, such that La Paloma will receive a refund it is not entitled to for that tax year, (3) calculating the refund for the 2013 through 2016 tax years by multiplying the assessment values *against a single tax rate* rather than using the specific tax rates applicable to each of the 10 assessment parcels underlying the 400-acre power plant, and (4) imposing a post-judgment interest rate of 10 percent rather than the rate of 7 percent applicable to local public entities like the County (see *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 344-345).

We decline to reach the merits of the Board's challenges to the calculation of the refund amounts for two reasons.

First, the Board lacks standing to mount those challenges. An appeal may be pursued only by an "aggrieved" "party" (Code Civ. Proc., § 902), which means the appellant must be a party of record whose rights or interests are "injuriously affected" by the order or judgment "under review" (*Estate of Kempton* (2023) 91 Cal.App.5th 189, 202; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263). Here, the trial court's calculation of the property tax refunds and directive to pay those amounts to La Paloma with interest is injurious to *the County*—not the Board— yet the County did not appeal the judgment. It is "elementary"

9

that one party "may not appeal on other issues that only affect the interests of" "non-appealing coparties." (*Nichols v. Nichols* (1933) 135 Cal.App. 488, 491; *Estate of Kempton*, at p. 202; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1808.) The Board accordingly lacks standing to challenge the trial court's judgment on the refund amounts and interest. In the supplemental briefing we invited on this issue, the Board argues that it has standing because it is a "necessary" party to this litigation, is the County's "agent," and has broader "interest[s]" "in maintaining legally appropriate state assessments" and "in ensuring proper tax administration." These reasons may explain why the Board has an abstract interest in having the assessments it performs be utilized for proper calculations of property taxes, but they do not explain why the Board is aggrieved by the asserted miscalculation of a tax refund that solely affects the County's coffers.

Second, even if we "liberally construe standing" in favor of the Board's right to appeal the refund issue (*Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 804), the Board (and the County) waived any challenges to the trial court's calculation of the refund amounts. Neither the Board nor the County ever contested the refund amounts proffered by La Paloma below, and neither the Board nor the County ever objected to the refund amounts set forth in the court's proposed statement of decision. Instead, for the first time on appeal, the Board asks us to take judicial notice of several documents describing La Paloma's 2015 property tax payments and setting forth various tax rates. We decline to exercise our discretion to overlook the Board's and the County's waiver of these contentions because doing so would

10

require us to interpret and apply the newly proffered evidence.[6] (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [noting "'established rule[] . . . that issues not raised in the trial court cannot be raised for the first time on appeal'"]; *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 ["'[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances"]; *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1194 [party's "effort to submit new evidence for [appellate court's] review in the first instance is improper"].)

Turning to La Paloma's appeal, that appeal effectively challenges the trial court's summary adjudication of the Board's affirmative defenses, as that summary adjudication is why the court's judgment awarded La Paloma no refund in tax year 2012 and capped La Paloma's refunds in tax years 2013 through 2016. The grant of summary adjudication on an affirmative defense is proper if "there is no triable issue of material fact as to the defense, and the moving party is entitled to judgment on the defense as a matter of law." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 977-978; Code Civ. Proc., § 437c, subd. (f)(1).) Because, as discussed below, the propriety of each of the Board's affirmative defenses turns on questions of statutory interpretation, our review is de novo. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273 [summary adjudication]; *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857 [statutory interpretation].)

---

[6] We accordingly deny the Board's request for judicial notice of these documents.

11

## I.     Pertinent Law Regarding the Taxation of State-Assessed Property

### A.     *The assessment of property tax for public utilities*

In California, the collection of property taxes against public utilities—which explicitly include "companies transmitting . . . electricity" and "electric generation facilities" (Cal. Const., art. XIII, § 19; § 721.5)—is a two-step process entailing a division of labor between the Board and the pertinent local taxing authority (here, the County).  First, *the Board* assesses the value of the property at its fair market value.  (§§ 20, subd. (c), 108, 721-723; Gov. Code, § 15600, subd. (b)(3); Cal. Const., art. XIII, § 19.)  Second (and after the assessed value is placed on the "roll" (§ 109)), *the local taxing authority* (either the county or city) (a) calculates the amount of the property tax due by multiplying the assessed value by the pertinent tax rate(s), (b) issues a tax bill to the utility, and (c) collects the tax.  (§§ 755-756, 758, 2152, 2601-2602; *Sprint Telephony PCS, L.P. v. Board of Equalization* (2015) 238 Cal.App.4th 871, 878 (*Sprint*); see *County of Santa Clara v. Superior Court* (2023) 87 Cal.App.5th 347, 360-361; *ITT World Communications, Inc. v. City and County of San Francisco* (1985) 37 Cal.3d 859, 863-864.)

### B.     *Right to seek a tax refund*

The public-utility taxpayer (or "[a]ssessee" (§ 23)) has a statutory right to seek a refund of the property taxes it paid in a two-step process.  Consistent with our State Constitution's mandate that tax refund actions "may be maintained" only "in such manner as may be provided by the Legislature" (Cal. Const., art. XIII, § 32), the statutory procedures for pursuing a tax refund must be "strictly enforced."  (*McClain v. Sav-On Drugs*

(2017) 9 Cal.App.5th 684, 695-696, affd. (2019) 6 Cal.5th 951; *Sprint*, *supra*, 238 Cal.App.4th at pp. 882-883.)

### 1. *Administrative proceeding*

The first step in seeking a tax refund is to file an administrative claim for a refund with the pertinent taxing authority. Where, as here, a taxpayer is challenging the assessment of property by the Board that gave rise to the local taxing authority's collection from the taxpayer, the taxpayer must seek reassessment before the Board *and* request a refund of overpayment from the taxing authority. (*Sprint*, *supra*, 238 Cal.App.4th at pp. 877-878.)

A taxpayer seeks reassessment before the Board by filing a "petition for reassessment." (§ 741; Cal. Code Regs., tit. 18, § 5323, subd. (a).) The petition must state (1) the taxpayer's "opinion" of the proper assessment value (Cal. Code Regs., tit. 18, § 5323.4, subd. (b)(1)); (2) "[w]hether the whole assessment is claimed to be void or, if only a part, what portion" (§ 5097.02, subd. (a); Cal. Code Regs., tit. 18, § 5323.4, subd. (b)(1) [requiring statement of the "precise elements of the Board's valuation . . . that petitioner is contesting"]); (3) "[t]he grounds on which the claim [for reassessment] is founded" (§§ 5097.02, subd. (b), 741; see also § 5096 [listing possible grounds]); and (4) the "facts relied upon to support the requested change in [assessment] value" (Cal. Code Regs., tit. 18, § 5323.4, subd. (b)(3)). The petition must be accompanied by "appraisal reports, financial studies and any other materials relevant to determining the [assessment value]" that justify the taxpayer's opinion of that value. (Cal. Code Regs., tit. 18, §§ 5323.4, subd. (b)(3), 5324.6, subds. (a), (c).) The petitioner must also either check the box on the standard petition form indicating that the petition is also "intended to

13

constitute a claim for refund" (§§ 5148, subds. (f), (g)(1), 1604, subd. (b)(1), 5097, subd. (b); Cal. Code Regs., tit. 18, § 5323.4, subd. (b)(2); *Sprint*, *supra*, 238 Cal.App.4th at p. 882), or file a separate administrative claim for a refund with the local taxing authority (§ 5097, subd. (b); *Sprint*, at p. 878).

Once the petition is filed, the taxpayer has the option of requesting a meeting with the Board's State-Assessed Properties Division and the Legal Unit in an attempt to "resolve all or some of the issues" presented in the petition. (Cal. Code Regs., tit. 18, § 5325(a).) If the parties at that meeting "agree[] to a joint recommendation on a proposed resolution" of the valuation challenge, the Legal Unit may ask the Board to render a summary decision adopting the agreed-upon recommendation. (Cal. Code Regs., tit. 18, §§ 5325.4, 5325.6.) The Board "is not required to adopt the recommendation" but becomes bound by the recommendation if it elects to adopt it. (Cal. Code Regs., tit. 18, § 5325.4; *Verizon California Inc. v. Board of Equalization* (2021) 64 Cal.App.5th 1155, 1159 (*Verizon*).)

### 2. *Civil action*

The second step in seeking a tax refund is to file a timely action in the trial court.[7] (§ 5140 et seq.) Where, as here, a taxpayer is challenging the assessment of property by the Board, an action for a refund "arising out of a dispute as to [that] assessment" may be filed *only* if the taxpayer has first filed a

---

[7] The default statute of limitations is four years (§ 5097, subd. (a)(2)); there is no timeliness issue in this case.

14

petition for reassessment with the Board.[8]  (§ 5148, subds. (e)(1)
& (g)(1).)  The scope of the refund action is delimited by the scope
of the earlier-filed administrative petition in two ways—namely,
(1) "[t]he action shall be limited in the case of valuation . . .
disputes *to the grounds specified* in the . . . petition" (§ 5148,
subd. (e)(1), italics added), and (2) where the taxpayer "intend[s]"
the petition to "constitute a claim for refund" and that claim
"relates only to a validity of a portion of an assessment," the
action is limited "only *as to that portion*" (§§ 5148, subd. (g)(1),
5143, italics added).

   At any trial on a refund action challenging an assessment
by the Board, the trial court is to "consider all evidence relating
to the valuation of the property admissible under the rules of
evidence" and is "not . . . restricted to the administrative record."
(§ 5170.)

## II.  Analysis

### A.  *Tax year 2012*

   La Paloma argues that the trial court erred, in applying its
ruling summarily adjudicating the Board's affirmative defense,
by declining to award any tax refund for the 2012 tax year on the
ground that La Paloma agreed with the State-Assessed
Properties Division during the administrative proceedings on its
petition for reassessment to a specific assessment value (and,
more to the point, to an assessment value higher than the value
it advocated at trial).  More broadly, La Paloma asserts a
taxpayer should not be foreclosed from seeking a greater tax

---

[8]      There are a few enumerated exceptions when an action
may be filed "without a claim" (§ 5097, subd. (d)), but none of
them is implicated in this case.

15

refund in its refund action than it agreed to accept during the prior administrative proceedings before the Board.

We independently conclude that the trial court's summary adjudication ruling was correct for two interrelated and reinforcing reasons.

To begin, and as noted above, section 5148 requires that an action for a tax refund must "aris[e] out of *a dispute* as to [that] assessment." (§ 5148, italics added.)  Where, as here, a taxpayer agrees with the Board's staff to a particular assessment value and the Board adopts that value as the proper assessment value, then there is no longer a "dispute," and no refund action is permitted by the plain text of section 5148.  This is precisely the reasoning used in *Verizon*, *supra*, 64 Cal.App.5th 1155, which held that a taxpayer's agreement to a joint recommendation "precludes the [taxpayer] from claiming there is a dispute . . . that is a predicate for a[ tax refund] action." (*Id.* at pp. 1162, fn. 4, 1160-1161.)

Moreover, a taxpayer who agrees to a specific assessment value rather than pressing forward with the value initially sought in its petition to the Board has failed to fully exhaust its administrative remedies.  The "'doctrine of "exhaustion of administrative remedies"'" generally "refers to the requirement that administrative remedies be pursued as a . . . prerequisite to seeking judicial relief from an administrative action." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148, quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.)  A "'corollary principle to the doctrine'" is that an administrative remedy is exhausted only if the taxpayer makes a "'full presentation to the administrative agency upon all issues of the case and at all prescribed stages of

16

the administrative proceedings.'" (*Sustainability, Parks, Recycling & Wildlife Defense Fund v. Department of Resources Recycling & Recovery* (2019) 34 Cal.App.5th 676, 695; *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609 (*City of San Jose*).)  Where a taxpayer agrees with the Board's staff to a joint recommendation of value, that agreement short circuits administrative review of the assessment dispute before the Board and results in a less than full presentation to the administrative agency upon all issues at all prescribed stages.

La Paloma resists this conclusion with a multitude of assertions that we have distilled into six arguments.

First, La Paloma argues that *Verizon* is both distinguishable and incorrectly decided.  La Paloma asserts that it is distinguishable because the taxpayer in *Verizon* did not provide a responsive separate statement when opposing the assessor's motion for summary adjudication (*Verizon*, *supra*, 64 Cal.App.5th at pp. 1161-1162) and because a former employee of the Board testified in this case that taxpayers cannot "settle" cases.  However, neither is a basis for distinguishing *Verizon* because the procedural snafu in *Verizon* is not germane to its statutory analysis and because what matters to that analysis is whether the taxpayer's agreement to a valuation assessment means there is no "dispute" during the administrative proceedings rather than whether that agreement also qualifies as a "settlement."  La Paloma proclaims that *Verizon* is wrong to hold that a taxpayer must "dispute" the assessment amount through the conclusion of the Board's administrative proceedings before filing suit; it should be enough, La Paloma asserts, that the taxpayer disputes the assessment at the time it files its

17

petition. However, if the purpose of a refund action in the trial court is to challenge the Board's ultimate order, then an order produced by agreement is not one arising out a "dispute"—even if the administrative proceeding *started* with a dispute. Citing legislative history, La Paloma also contends that *Verizon* ignores the taxpayer's right to a "trial de novo" (that is, to a trial beyond the administrative record under section 5170), so there is always a "dispute"—even when the taxpayer agreed not to dispute the value established by the joint recommendation. However, the snippet of legislative history La Paloma cites simply rejects the notion that judicial review should be limited to the administrative record; more the point, the taxpayer's right to a "trial de novo" that looks beyond the administrative record does not mean the taxpayer gets to hit the reset button in a refund action or that the taxpayer's litigation positions before the Board—including its decision to no longer dispute an assessment value—should be ignored. (See *International Federation of Prof. & Technical Engineers v. City & County of San Francisco* (2000) 79 Cal.App.4th 1300, 1308, fn. 9 [implying that party may not take position in litigation inconsistent with position in administrative proceeding].)

Second, La Paloma argues that there are only two steps to administrative exhaustion when seeking reassessment before the Board (namely, the taxpayer's filing of a petition for reassessment and the Board's issuance of an order), that courts may not add new steps not provided for in a statute (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 326-327 (*Agnew*)), and that precluding a refund action when a taxpayer agrees to an assessment value in a joint recommendation effectively adds a new step to administratively exhausting a

18

petition for reassessment.  Precluding a taxpayer from appealing in a refund action the assessment value it agreed to before the Board does not add a new, statutorily unauthorized step to exhaustion.  Section 5148—which is a statute—plainly requires that there be a "dispute," and we have interpreted that statutory requirement to mean the dispute must exist throughout the proceeding before the Board.  This interpretation does not add a new step because the requirements that the taxpayer file a petition and the Board resolve that petition with an order necessarily include the intermediate step of "full[y] present[ing]" "all issues of the case" in litigating that petition.  (*City of San Jose, supra*, 49 Cal.4th at p. 609; cf. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1115-1117 [because employees are not required to administratively exhaust wage claims before the Labor Commissioner (since the purpose of that voluntary administrative proceeding is to "'provide a speedy, informal, and affordable'" alternative to "'costly and time-consuming judicial proceedings'"), any "de novo trial of the wage dispute" in trial court may include new wage claims never presented to the Labor Commissioner].)

Third, La Paloma argues that the Board shirks its constitutional and statutory duty to assess property at its fair market value (Cal. Const., art. XIII, § 19; §§ 721, 722; *Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 607) when the Board summarily affirms a joint recommendation.  This argument assumes that the assessment value reached in a joint recommendation between the Board's staff and the taxpayer is necessarily at an amount higher than fair market value.  But the Board's staff is subject to the same duty to assess property at the fair market value as the Board itself; that the State-Assessed

19

Properties Division calculates a revised assessment value with which the taxpayer happens to agree does not mean that the revised value is higher than the fair market value.

Fourth, La Paloma argues that *the Board* is not obligated to adopt the agreed-upon assessment value, such that holding the taxpayer to that value during the subsequent refund action erects an unfair "double standard" and impermissibly gives the government more leeway than private litigants. (*Title Ins. Co. v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 730 [""Men must turn square corners when they deal with the Government," it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens""].) This argument misunderstands the nature of the Board's operation. Although the Board is not obligated to adopt the joint recommendation of a particular assessment value, once "the Board approves [that recommendation,] it [becomes] the agreement between the [taxpayer] and the Board that is binding." (*Verizon*, *supra*, 64 Cal.App.5th at p. 1162, fn. 4; see also Gov. Code, § 15600, subd. (e)(2) [Board employs staff to carry out assessment duties].) The only reason why approval is not done in two steps for the taxpayer is because the taxpayer acts on its own behalf in representing its interests (while the Board necessarily acts through its staff). In the end, both the Board and the taxpayer are bound once they agree to the assessment value; there is no disparity in treatment.[9]

---

[9] At oral argument, La Paloma argued that *it* should not be bound by the assessment value it agreed to in the administrative proceedings and could request a lower value during the refund action because *the Board* was not bound to the assessment value agreed to in the administrative proceedings (and, in fact,

Fifth, La Paloma argues that its agreement to the joint recommendation of value before the Board should not preclude it from obtaining a tax refund because La Paloma filed a separate petition for a refund with the County rather than checking the box on its petition for reassessment indicating that the petition also functioned as a "request for [a tax] refund." We reject this argument. Because only *the Board* can reassess the property, La Paloma's filing of a separate refund claim with the County— which lacks the power to reassess the property—is irrelevant to whether *the assessment* was in dispute or had been fully exhausted before the Board. La Paloma cites *Roth v. City of Los Angeles* (1975) 53 Cal.App.3d 679 for the proposition that it could *either* petition the Board for reassessment *or* file a refund claim with the County, but *Roth* holds that a taxpayer need only pursue one remedy as between two "distinct and cumulative remedies for recovery of taxes." (*Id.* at p. 684.) Here, by contrast,

introduced evidence of a higher assessment value during the trial which, if the Board had prevailed in the refund action, may have provided a basis for seeking additional "escape assessments" against La Paloma). La Paloma effectively argues that what is good for the goose is good for the gander. But the taxpayer and the Board lack the parity La Paloma posits because the Board (unlike a taxpayer) has a constitutional duty to initiate administrative proceedings and then proceed to court to seek "escape assessments" whenever its initial assessment value is too low—whether or not a taxpayer files a refund action. (§§ 741-744, 758, 532, 51.5; *Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 14.) Any lack of parity is not implicated in this case in any event because the Board—even if it introduced evidence of a higher assessment value during La Paloma's refund action—did not seek any escape assessments against La Paloma.

a taxpayer who assails the Board's assessment of value for a state-assessed property must petition for reassessment by the Board *and* seek a refund from the local taxing authority; the remedies are sequential and mandatory, not cumulative.

Sixth and finally, La Paloma argues that the substance of the Board's affirmative defense—namely, that a taxpayer may not pursue a refund action challenging the Board's adoption of a joint recommendation of value that the taxpayer itself agreed to—constitutes an impermissible "underground regulation." As pertinent here, California's Administrative Procedures Act (APA) (Gov. Code, § 11340 et seq.) provides that "[n]o state agency shall . . . utilize . . . any . . . rule, . . . unless the . . . rule has been adopted as a regulation" (*id.*, § 11340.5, subd. (a)), and provides that a rule may be adopted as a regulation only after being subjected to public scrutiny through a process of notice, public comment, and review. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568.) A rule is "subject to the APA" if it (1) applies generally by "declar[ing] how a certain class of cases will be decided," and (2) "'implement[s], interpret[s], or make[s] specific the law enforced or administered by [the agency], or . . . govern[s] [the agency's] procedure.'" (*Id.* at p. 571; *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 555 (*Alvarado*).) A rule that is subject to the APA but not properly adopted as a regulation is known as an "'underground regulation'" and is "void." (*Tidewater*, at pp. 561, 563.)

We reject La Paloma's argument for several reasons. For starters, La Paloma cites no authority for the proposition that the defenses asserted by an agency when defending its actions in court constitute an underground regulation, at least where, as here, those defenses played no role in how the agency decided the

administrative petition at issue. At oral argument, La Paloma asserted that *Agnew*, *supra*, 21 Cal.4th at p. 333 supports its argument, but *Agnew* held merely that an agency rule purporting to require prepayment of *interest* on a tax as a prerequisite to a tax refund action was invalid; *Agnew* did not hold that an agency's litigation positions in court constituted underground regulations. Moreover, an agency's rule is not an impermissible underground regulation if that rule is the "'only legally tenable interpretation'" of the governing law (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336, quoting Gov. Code, § 11340.9, subd. (f)), and here, section 5148 and the principles of administrative exhaustion all but dictate the rule that a taxpayer cannot seek a tax refund based on a lower assessment than it agreed to in an administrative proceeding. And even if the question were debatable, *we* have concluded that this is the appropriate rule, so it does not matter to the outcome of this appeal whether the Board's rule is void as an impermissible underground regulation. (*Alvarado*, *supra*, 4 Cal.5th at pp. 556-557.)[10]

_____

[10]    La Paloma also asserts that we must accept its underground regulation argument simply because the Board did not address that argument in its respondent's brief. This is not the law. (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 84, fn. 8 ["it is the appellant's burden to affirmatively demonstrate error . . . regardless of whether the respondent has provided argument or authority in support of the trial court's decision"]; *Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505 ["a respondent's complete failure to address an appellant's argument does not require us to treat the failure to respond as a concession the argument has merit," italics omitted].)

**B.** *Tax years 2013 through 2016*

La Paloma argues that the trial court erred, in applying its ruling summarily adjudicating the Board's affirmative defense, by limiting La Paloma's award of tax refunds for the 2013 through 2016 tax years to the assessment values La Paloma listed in its petitions for reassessment before the Board.

We independently conclude that the trial court's summary adjudication ruling was correct because the pertinent statutes dictate that ruling for two interrelated and reinforcing reasons.

To begin, capping a taxpayer's assessment-based refund action at the amount of the assessment value the taxpayer sought administratively is dictated by the pertinent statutes. Section 5148 is the statute that applies when a taxpayer files "an action to recover taxes levied on state-assessed property arising out of a dispute" over the assessment "valu[e]." (§ 5148.) That statute requires the taxpayer to first file a petition for reassessment, and limits the ensuing refund action to "the grounds specified in [the taxpayer's] . . . petition." (*Id.*, subd. (e)(1).) And that statute permits the taxpayer to declare that its petition is also "intended to constitute a claim for refund." (*Id.*, subd. (g)(1).) Section 5143 provides that "[i]f a claim for refund relates only to the validity of a portion of an assessment, a[ refund] action may be brought under this article"—which includes section 5148—"only as to that portion." (§ 5143.) Because La Paloma in its petitions for reassessment filed for tax years 2013 through 2016 checked the boxes indicating that it intended those petitions to also serve as claims for a refund, and because those claims related only to the portion of the assessment amounts that it challenged, La Paloma's refund action is similarly confined "to that portion." Consistent with this analysis, *Mission Housing Development Co.*

24

*v. City and County of San Francisco* (2000) 81 Cal.App.4th 522 (*Mission Housing*) construed section 5143 to stand for the proposition that "a taxpayer who files a refund action can recover no more than the amount he sought in his underlying claim." (*Id.* at p. 527.)

Moreover, capping a taxpayer's assessment-based refund action at the amount of the assessment value the taxpayer sought administratively is consonant with the more "general rule applicable in tax cases . . . that the 'claim for refund [made to the taxing authority] delineates and restricts the issues to be considered in a taxpayer's refund action. . . .'" (*Mission Housing, supra*, 81 Cal.App.4th at p. 527; *Atari Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 672; accord, *Harmony Gold U.S.A., Inc. v. County of Los Angeles* (2019) 31 Cal.App.5th 820, 827; *Jimmy Swaggart Ministries v. State Bd. of Equalization* (1988) 204 Cal.App.3d 1269, 1290 ["'The claim for refund thus frames and restricts the issues for litigation'"].)

La Paloma resists this conclusion with a cavalcade of assertions which we have boiled down to four arguments.

First, La Paloma argues that our statutory analysis is incorrect. To start, La Paloma contends that section 5143's limitation of a refund action to the "portion" of the assessment challenged in an administrative claim does not apply to state-assessed property because section 5142 specifically says that limitation does not apply to actions under section 5148. (§ 5142, subd. (a).) This is true, but irrelevant because a taxpayer who petitions the Board for reassessment under section 5148 and who indicates its intention that the petition "constitute a claim for refund" is subject to the statutory provisions applicable to a "claim for refund" other than section 5142, which includes section

25

5143.[11] This is why La Paloma's attempt to distinguish *Mission Housing* fails.[12] Next, La Paloma for the first time in its reply brief argues that the word "portion" in section 5143 refers to a taxpayer's decision to challenge some but not all *categories* of assessments rather than some but not all of the *amount* of the assessment. This distinction appears nowhere in the text of section 5143, which uses "portion" without limitation; we decline to read the statute in a way that is inconsistent with the general principle of tax law, noted above, that underlies this statute. (See *In re R.T.* (2017) 3 Cal.5th 622, 627 [noting guiding principles of statutory construction].) We relatedly decline La Paloma's invitation to construe "portion" in the taxpayer's favor; although ambiguities in tax statutes are construed in favor of the taxpayer (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 759), section 5143's use of the word "portion" without limitation is not ambiguous.

Second, La Paloma argues that there are sound policy reasons not to cap the reassessment sought in a taxpayer's refund action to the value the taxpayer sought in its petition for reassessment. La Paloma contends that capping the value to the amount sought in the petition is unfair because that amount is

---

11    At oral argument, La Paloma asserted that the statutory mechanism for seeking a refund (that is, whether the taxpayer is seeking a refund from the State or from a local taxing authority) matters, but section 5143's language draws no such distinction.

12    Because we find section 5143 applicable, we need not address La Paloma's further argument that the limitation on "grounds" for seeking reassessment under section 5148 is distinct from the limitation on the "portion" of reassessment sought under section 5143.

26

necessarily "preliminary." This characterization inaccurately portrays the nature of the proceedings before the Board. As noted above, the reassessment value a taxpayer states in its petition must be accompanied by the grounds for that reassessed amount as well as documentation supporting the calculation of that reassessed amount (e.g., *Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1269 [noting how "pure questions of valuation" involved in assessing property value "are often inextricably connected to related issues of fact," including "whether [the] property has been properly classified" and other grounds for reassessment]); indeed, in most cases, the only further step by the taxpayer in the administrative proceeding is to present 30 minutes of argument to the Board at the hearing itself (Cal. Code Regs., tit. 18, §§ 5323.4, subd. (b)(4), 5523.5, subd. (c)). More to the point, binding the taxpayer to the assessment value stated in its petition *is* sound policy because the taxpayer's opinion on value is factually developed and defended by the taxpayer with the filing of that petition and therefore is not a "preliminary" opinion. La Paloma urges that the Board does not treat the taxpayer's opinion as binding during the administrative proceedings, but the issue here is not whether the opinion is binding *on the Board* but binding *on the taxpayer*.[13] Next, La Paloma asserts that treating the assessment value stated in the petition as a cap is inconsistent with *J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978,

---

[13] We accordingly deny as irrelevant La Paloma's request for judicial notice of an opinion letter authored by the Board over two decades ago noting that the taxpayer in that case did not need to take further action once the Board determined that a refund was owed.

27

*Williams & Fickett*, 2 Cal.5th 1258, and *Graham v. Bryant* (1954) 123 Cal.App.2d 66. But *J. H. McKnight* merely holds that a taxpayer's failure to explicitly raise an argument in administrative proceedings did not preclude that argument from being raised in the subsequent tax refund action where the taxing authority was actually aware the argument was at play during the administrative proceedings (*J. H. McKnight*, at pp. 986-988); here, the Board lacked actual awareness that the reassessment value La Paloma asserted in its petition was not the value it would seek in a subsequent refund action. *Williams & Fickett* holds that a taxpayer must still challenge the assessment of property even when the basis for that challenge is that the taxpayer "does not own the property involved" (*Williams & Fickett*, at pp. 1264, 1268-1272); although *Williams & Fickett* notes the taxpayer in that situation might permissibly "opine that the true value is unknown" (*id.* at p. 1273), the irrelevance of the assessment value when the issue is *not* assessment is, well, irrelevant to a case like this one where the taxpayer's claim turns on the assessment value. And *Graham* is not even a tax case.

Third, La Paloma argues it is entitled to a "trial de novo" in its refund action before the trial court, and that such a trial necessarily encompasses a right to seek a refund based on any assessment value—regardless of what La Paloma sought administratively before the Board. We reject this argument. As noted above, section 5170 defines the trial de novo to mean that a trial court is to consider evidence outside the administrative record (accord, *Southern Pacific Pipe Lines, Inc. v. State Bd. of Equalization* (1993) 14 Cal.App.4th 42, 55 [so noting]); section 5170 says nothing about disregarding how the taxpayer framed its claims in the administrative proceedings. In other contexts, a

28

trial de novo reaches the "issues raised by the pleadings" (*Trump v. Superior Court* (1981) 118 Cal.App.3d 411, 417); where the taxpayer's petition for reassessment requests a specific assessment value and justifies that value, any ensuing trial de novo—just like the administrative proceedings it reviews—is framed by and limited to that value.  To hold otherwise is to permit a taxpayer to "present a 'skeleton' case [before the Board] and reserve the real showing on the merits for the trial [de novo]."  (*Dare v. Board of Medical Examiners* (1943) 21 Cal.2d 790, 795; *Harris v. Alcoholic Beverage Control Appeals Board* (1961) 197 Cal.App.2d 182, 187; see also *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 133-134 [stipulations in administrative proceedings are binding in ensuing review trial].)

Fourth and lastly, La Paloma argues that the substance of the Board's affirmative defense—namely, that a taxpayer may not pursue a refund action based on a value that is lower than what the taxpayer requested and justified in its petition for reassessment before the Board—constitutes an impermissible "underground regulation."  We reject this argument for the same reasons we rejected La Paloma's similar argument labeling the Board's other affirmative defense as an impermissible "underground regulation":  La Paloma has not cited any support for its position that the agency's litigation position is an "underground regulation" when that position did not play a role in how the agency decided the administrative petitions at issue; any "underground regulation" is dictated by the statutory language in sections 5148 and 5143; and our independent conclusion that a taxpayer is bound by the assessment value it

asserts administratively means that any voidness in the agency's rule is of no moment.

## DISPOSITION

The judgment is affirmed.  Each party is to bear its own costs.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
KIM (D.)


_____, J.
WILLIAMS*

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.